UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LAURA CONSTANTINE, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL GRID USA SERVICE COMPANY,<br><br>Defendant. | Civil Action No. 25-cv-10500-AK |

**MEMORANDUM AND ORDER ON
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

**ANGEL KELLEY, D.J.**

Plaintiff Laura Constantine sued her prior employer, Defendant National Grid USA Service Company ("National Grid"), alleging National Grid violated the Fair Labor Standards Act ("FLSA") and Massachusetts Wage Act ("the Wage Act") by failing to pay overtime, and violated the Wage Act by paying wages late and on a monthly basis. [Dkt. 1]. Before the Court is Constantine's Motion to Certify the "Monthly Pay Class" of National Grid's employees. [Dkt. 18]. For the following reasons, Constantine's Motion to Certify a Class [Dkt. 18] is **GRANTED**.

**I.    BACKGROUND**

Constantine began working for National Grid in 2008 as an administrative assistant. [Dkt. 19-6, ¶ 2]. After being laid off, she was re-hired to work as an office clerk. [Id. ¶ 3]. As an office clerk, she was paid on a weekly basis. [Id.]. On September 13, 2016, National Grid sent Constantine a letter informing her that she was being offered the position of Resource

1

Coordinator. [Id. ¶ 4; Id. at 5-6]. The letter informed Constantine that, if she accepted the promotion, she would be paid an annual base salary of $65,200. [Id. at 5-6]. In addition, the letter informed Constantine that she would "be paid monthly on or about the 21st of the month." [Id.]. Constantine did not sign the offer letter but accepted the promotion and began working as a Resource Coordinator in November of 2016. [Id.; Id. ¶ 5]. As a result, National Grid paid Constantine her salary on the twenty-first day of each month for the remainder of her employment. [Id. ¶¶ 4-5; Dkt. 25 ¶ 5].

On March 3, 2025, Constantine filed suit on behalf of herself and others similarly situated, alleging violations of the FLSA and the Wage Act. [Dkt. 1]. The Wage Act permits monthly payment to a subsection of employees only if "such employee elects at his own option to be paid monthly." Mass. Gen. L. ch. 149 § 148. As relevant to this motion, Constantine alleges that National Grid violates the Wage Act by paying its salaried employees on a monthly basis by default, because employees did not have the opportunity to "elect" monthly payment. [Dkt. 1 ¶¶ 13-14]. Constantine further alleges that, because salaried employees were paid on the twenty-first of the month, they were not paid within 6 days of the end of the payment period, as required under the Wage Act. [Id. ¶¶ 102-104]. On July 17, 2025, Opt-in Plaintiff Daniel Zimmerman opted into the class and collective action. [Dkt. 17]. Zimmerman was also paid once per month on the twenty-first of each month during his employment at National Grid. [Dkt. 26-1 at 16].

Some discovery has already been completed by the parties. During discovery, National Grid admitted that from March 3, 2022 to March 3, 2025 "all salaried management employees of [National Grid] in Massachusetts were paid their salaries once per month on the twenty-first day of each month" and "at least one hundred of [National Grid's] salaried employees in

2

Massachusetts were paid their salaries once per month on the twenty-first day of each month." [Id. at 17-18]. National Grid further stated in its answers to interrogatories that "Plaintiff elected to be paid on a monthly basis by agreeing to the terms outlined in her promotion letter [and] could have rejected the payment frequency outlined in her promotion letter by declining the position or requesting more frequent payment of wages," and "[National Grid's] salaried employees in Massachusetts were paid their salaries once per month on the twenty first day of each month." [Id. at 7-8].

Following this initial discovery, Constantine seeks to certify the following class: "All individuals currently or formerly employed by National Grid USA Service Company, Inc. in the past three (3) years who were subject to its monthly pay practice in the Commonwealth of Massachusetts (the "Monthly Pay Class")." [Dkt. 19 at 6]. As alleged, National Grid's "monthly pay practice" is a "company-wide policy to pay salaried employees working within the Commonwealth of Massachusetts on a monthly basis" by default. [Id.]. For the reasons below, the Court grants Constantine's Motion to Certify the Monthly Pay Class.

## II.   LEGAL STANDARD

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Califano v. Yamasaki, 442 U.S. 682, 700-01 (1979). Therefore, the burden of proof lies on the plaintiff to demonstrate that the proposed class satisfies the required elements of Rule 23(a) and 23(b). Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013). When determining whether to certify a class, "[a] district court must conduct a rigorous analysis" to ensure that all the requirements of Rule 23(a) and at least one subsection of Rule 23(b) are met. Smilow v. Southwestern Bell Mobile Sys., Inc., 323 F.3d 32, 38 (1st Cir. 2003). While this analysis may overlap with the merits of the underlying claim, the inquiry must

only extend to what is necessary to determine whether Rule 23 has been satisfied. Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 465-66 (2013). Class certifications are not set in stone. Courts may "alter[] or amend[]" certifications, including decertifying a class, "before final judgment." Fed. R. Civ. P. 23(c)(1)(C).

### III.  DISCUSSION

#### A.  Requirements of Rule 23(a)

Rule 23(a) requires a showing that: (1) the class is so numerous that joinder of all members is impractical (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy). Smilow, 323 F.3d at 38 (citing Fed. R. Civ. P. 23(a)).

First, the class is sufficiently numerous such that joinder is impractical. The threshold for establishing numerosity is low, and "[c]lasses of 40 or more have been found to be sufficiently numerous." DeRosa v. Mass. Bay Commuter Rail Co., 694 F. Supp. 2d 87, 98 (D. Mass. 2010); see Garcia-Rubiera v. Calderon, 570 F.3d 443, 460 (1st Cir. 2009). Here, National Grid's responses to Constantine's Request for Admission indicate that the proposed class includes at least one hundred employees. [Dkt. 26-1 at 18]. Further, National Grid does not contest the numerosity requirement. [Dkt. 24 at 4 n.2]. Therefore, numerosity is satisfied.

Rule 23(a)(2) next requires that there be "questions of law or fact common to the class." The "threshold for commonality under Rule 23(a)(2) is not high." In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig., 270 F.R.D. 45, 54 (D. Mass. 2010). While there must be at least one common issue of fact or law that shapes the class such that the resolution "affect[s] all or a

4

substantial number of the class members," id., a plaintiff need not show that every fact and legal issue is shared by each class member, In re Lupron Mktg. & Sales Prac. Litig., 228 F.R.D. 75, 88 (D. Mass. 2005). Here, all class members were salaried National Grid employees and were paid monthly. The predominant common legal question is whether National Grid violated class members' rights under the Wage Act by paying its salaried employees on a monthly basis by default. As such, common issues of fact and core legal questions unite the class.

To satisfy the third requirement, typicality, Constantine need only to demonstrate that her "injuries arise from the same events or course of conduct as do the injuries of the class" and that the "plaintiff's claims and those of the class are based on the same legal theory." In re Credit Suisse-AOL Sec. Litig., 253 F.R.D. 17, 23 (D. Mass. 2008). Here, Constantine's claim is based on the same essential events and underlying legal theories as the other Monthly Pay Class members. Constantine and all potential class members were allegedly opted into monthly pay by National Grid. Constantine's legal theories of recovery, which are grounded in the Wage Act, are typical to the class as a whole. Further, National Grid does not contest the typicality requirement. [Dkt. 24 at 4 n.2]. Constantine's claims are therefore typical of the absent class members.

Finally, the proposed class is adequately represented by both Constantine, as the class representative, and her counsel. Rule 23(a)(4) requires that the class representative's interests do not conflict with any potential class member, and that the class counsel can adequately represent the interests of the class. See Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985). Constantine does not have any identifiable conflicts with potential class members, and her interests align with the potential class members because they all seek redress from essentially the same injury: monthly payment without opting into such. See Bussie v. Allmerica Fin. Corp.,

50 F. Supp. 2d 59, 71 (D. Mass. 1999) (finding the class representative to be adequate because, "[l]ike the [c]lass overall, [the plaintiff] fell victim to [the defendant's] alleged scheme and, as such, the representatives and the [c]lass share the same interest in seeking remediation for their injury"). National Grid does not contest Constantine's adequacy. [Dkt. 24 at 7 n.3]. As to counsel's adequacy, Constantine obtained the services of DarrowEverett LLP, which has relevant experience and interest in class action litigation. [Dkt. 26-1 at 1-3; Dkt. 26-2]. Accordingly, the requirements of adequacy, and Rule 23(a) overall, are satisfied.

### B. Requirements of Rule 23(b)

Constantine proposes class certification under Rule 23(b)(3). Rule 23(b)(3) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Smilow, 323 F.3d at 38 (citing Fed. R. Civ. P. 23(b)(3)). Matters "pertinent" to evaluating predominance and superiority include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

### 1. Predominance

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 623 (1997). Rule 23(b)(3) does not require a plaintiff to "prove that each element of [the] claim is susceptible to classwide proof." Amgen, 568 U.S. at 469 (citation modified). Nonetheless,

courts "must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 298 (1st Cir. 2000). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 453 (2016) (citation modified); Smilow, 323 F.3d at 39 ("Courts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members.").

    National Grid argues that individual issues predominate because (1) the Court needs to address whether employees are eligible for monthly payment because they are "engaged in a bona fide executive, administrative or professional capacity" and (2) whether an employee "elects" to receive monthly payment requires individual analysis. [Dkt. 24]

    To address the first issue, the Wage Act permits monthly payment to "employees engaged in a bona fide executive, administrative or professional capacity" and "employees whose salaries are regularly paid on a weekly basis or at a weekly rate for a work week of substantially the same number of hours from week to week," so long as "such employee elects at his own option to be paid monthly." Mass. Gen. L. ch. 149 § 148. These are the only two categories of employees which may be paid monthly. Sullivan v. Dunmont Aircraft Charter, LLC, 364 F. Supp. 3d 63, 79 (D. Mass. 2019) ("The Wage Act also makes clear that employers must pay their employees weekly, bi-weekly, or, only if elected by the employee, monthly, and

that this payment schedule is to be followed without exception.") (citing Mass. Gen. L. ch. 149 § 148).

National Grid argues that individual issues predominate because determining whether an employee "engaged in a bona fide executive, administrative or professional capacity" requires an individual determination. [Dkt. 24 at 9-10]. This is beside the point. The Wage Act also permits employees to opt into monthly payment if their "salaries are regularly paid on a weekly basis or at a weekly rate for a work week of substantially the same number of hours from week to week." Mass. Gen. L. ch. 149 § 148. Plaintiff asks for class certification of employees who are subject to National Grid's policy of paying salaried employees monthly, on the twenty-first, by default. Salaried individuals may opt into monthly payment. Therefore, the class only contains only individuals who may opt into monthly payment, and the Court need not address the individualized assessment for employees "engaged in a bona fide executive, administrative or professional capacity."

Next, National Grid argues that individualized proof is required to determine whether class members elected to be paid monthly because there are multiple ways for employees to "elect" to be paid monthly. Again, this argument elides the point. Constantine alleges that National Grid's policy of default monthly payments for salaried employees violates the Wage Act.[1] If Constantine can show that National Grid has such a policy and can convince the Court that the policy violated the Wage Act, all class members will have been injured in the same way. The possibility that a plaintiff will not be able to prove their allegations is not a reason for declining class certification. Salvas v. Wal-Mart Stores, Inc., 452 Mass. 337, 363 (Mass. 2008).

---

[1] National Grid also argues that monthly payment is not per se illegal under the Wage Act. This is a red herring. Constantine does not argue that monthly payment always violates the Wage Act. She argues that National Grid's monthly payment policies violate the Wage Act because they do not permit salaried employees to "elect" monthly payment and monthly class members were paid late.

And "the existence of a common disputed issue weighs in favor of class certification, not against it." In re New Motor Vehicles Canadian Export Antitrust Litigation, 522 F.3d 6, 23 (1st Cir. 2008).

Constantine alleges that all class members are entitled to the same legal remedies premised on National Grid's late, monthly payment without employee election. The issues affecting every claimant are substantially the same. As such, the class is sufficiently cohesive to warrant litigation by representation. Amchem, 521 U.S. at 623.

Insofar as some class members would have elected for monthly payment regardless of National Grid's policy, such individual issues do not predominate. In re Nexium Antitrust Litig., 777 F.3d 9, 19-20 (1st Cir. 2015) (upholding class certification even though some consumers would have continued to purchase the brand name even if the generic was available). Class certification is permissible where some members of the class were not injured by a defendant's actions, so long as "prior to judgment, it will be possible to establish a mechanism for distinguishing the injured from the uninjured class members." Id. at 19. This mechanism must be "administratively feasible" and "protective of defendants' Seventh Amendment and due process rights." Id.

Neither party has proposed a possible mechanism for distinguishing the injured from the uninjured class members. Nonetheless, multiple options exist. Class members could be required to submit an affidavit stating that they would not have chosen monthly pay had they known it was an option. Id. at 20. Alternatively, the Court could "decertify [the] class after liability issues have been resolved" or "appoint a magistrate judge or special master" to determine whether damages are appropriate for individual class members. Garcia v. E.J. Amusements of New

Hampshire, Inc., 98 F. Supp. 3d 277, 291 (D. Mass. 2015). As such, individual differences in damages do not preclude class certification.

### 2. Superiority

Superiority requires a class to be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Superiority ensures "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." Amchem, 521 U.S. at 617 (citation modified).

Class litigation is a superior vehicle for this case because Constantine challenges a uniform policy that has similarly affected many of National Grid's employees. Further, individual class members may abstain from suing National Grid for fear of retaliation. See Vargas v. Spirit Delivery & Distribution Servs., Inc., 245 F. Supp. 3d 268, 289 (D. Mass. 2017) (giving "some weight to [Plaintiff's] assertion that in the employment context, individual's decline to bring suit because of the fear of retaliation."); DaSilva v. Border Transfer of MA, Inc., 296 F. Supp. 3d 389, 406 (D. Mass. 2017) ("The plaintiffs are correct that efficiency and the policy considerations unique to the employment context make class adjudication superior."); Ouadani v. Dynamex Operations E., LLC, 405 F. Supp. 3d 149, 167 (D. Mass. 2019) (same).

National Grid argues that class action is not superior because potential class members have sufficient incentive to litigate on their own, due to the Wage Act's provision of treble damages. Although monetary incentives are a consideration in the superiority analysis, they are not determinative. Where some class members are likely to have a small recovery, class certification is appropriate, even if other class members have sufficient incentive to litigate the claims on their own. See Vargas, 245 F. Supp. 3d at 289 ("While class members probably could litigate the claims on their own, given that some class members worked for [the defendant] only

for a limited period and are likely to recover a minimal amount, pursuing individual claims would be impractical."); Torrezani v. VIP Auto Detailing, Inc., 318 F.R.D. 548, 556 (D. Mass. 2017) ("While class members probably could litigate the claims on their own . . . it is unlikely many of the class members would have the resources to do so. This is especially true given that many of the class members worked for only limited periods of time and are likely to recover a minimal amount so that pursuing individual claims would be impractical."). Although class members like Constantine could have substantial recovery, others, like Zimmerman, worked for National Grid for a limited time and are likely to have a substantially smaller recovery.

Further, class actions are regularly permitted under the Wage Act, even though treble damages are available. See Ouadani, 405 F. Supp. 3d at 167; Muniz v. XPO Last Mile, Inc., 342 F.D.R. 189, 199 (D. Mass 2022). In fact, the Wage Act itself considers the possibility of class actions. Gammella v. P.F. Chang's China Bistro, 482 Mass. 1, 9 (2019) ("[B]oth [Mass. Gen. L. ch.] 149, § 150, and [Mass. Gen. L. ch.] 151, § 20, allow an aggrieved employee to bring suit against his or her employer 'on his own behalf, or for himself and for others similarly situated.'"). To find that treble damages per se prohibit class certification would pit the Wage Act against itself. Accordingly, class certification is a superior form of litigation.

IV. **CONCLUSION**

For the foregoing reasons, Constantine's Motion to Certify a Class [Dkt.18] is **GRANTED**.

    **SO ORDERED.**

Dated: February 20, 2026                        /s/ Angel Kelley
                                                                           Hon. Angel Kelley
                                                                           United States District Judge